

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-25-00235-CV

---

## IN THE INTEREST OF D.M., A CHILD

---

On Appeal from the 320th District Court
Potter County, Texas
Trial Court No. 099079-D-FM, Honorable Steven Denny, Presiding

---

October 27, 2025

## MEMORANDUM OPINION

### Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Appellant, T.H., appeals from the trial court's order terminating her parental rights to her child, D.M., based on predicate grounds (D), (E), (L), and (O).[1]  By two issues set forth in the body of her brief, she maintains (1) the evidence is factually insufficient to support the best-interest finding and (2) termination under section 161.001(b)(1)(O) requires reversal because she made a good faith effort to complete her court-ordered services.  However, in the Table of Contents section of her brief, she asserts the evidence

---

[1] To protect the privacy of the parties involved, we refer to them by their initials.  *See* TEX. FAM. CODE § 109.002(d).  *See also* TEX. R. APP. P. 9.8(b).  The father's parental rights were terminated pursuant to an affidavit of voluntary relinquishment, and he did not appeal.

is factually insufficient to support termination under subsections (D), (E), (O), and (P). Subsections (D) and (E) are not briefed or mentioned again. Subsection (P) was not a predicate ground found by the trial court and appears to be a typographical error because T.H. acknowledges termination under (L). She does not, however, challenge the trial court's finding under (L). We affirm.

## BACKGROUND

In June 2024, when T.H. and her three-year-old child lived in Vernon, Appellee, the Texas Department of Family and Protective Services, received a report the home was infested with bedbugs and roaches. The Department opened an investigation, but the parties soon moved to Amarillo. Shortly thereafter, a witness called police after witnessing T.H. abuse her child at a park. The child was taken to the hospital and admitted for physical injuries.[2] T.H. was arrested for injury to a child and subsequently pled guilty to the charge in exchange for four years deferred adjudication community supervision.[3]

The Department contacted the child's father after T.H.'s arrest and asked if he could pick up his child. He claimed he had no transportation from Vernon and admitted he is an unfit parent. T.H. was unable to provide any potential placements and the child was placed in foster care when she was released from the hospital.

---

[2] The evidence showed the child had bite marks on her abdomen, bruises, scratches, minor burns (possibly sunburn), dried blood crusted on her mouth, lips, and teeth, blisters on her feet, and a mark on her cheek that appeared to be a handprint. T.H. offered excuses for some of the injuries but did not remember slapping the child. She confirmed she was sober and had already taken parenting classes when she bit her child as a means to de-escalate a tantrum.

[3] T.H. was pregnant with another child who was removed from her care following his birth.

2

A Department investigator received a report concerning the child's injuries and hospitalization. The evidence showed the child had not received any significant medical care since birth when she was diagnosed with a heart murmur.[4] The investigator described the child as non-verbal and was later diagnosed with autism.

The Department sought termination of T.H.'s parental rights. Following a hearing on the Department's petition, the trial court found clear and convincing evidence to terminate T.H.'s parental rights on the following grounds:

- knowingly placed or allowed the child to remain in conditions or surroundings which endangered her well-being;

- engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered her well-being;

- has been convicted or has been placed on community supervision, including deferred adjudication community supervision, for being criminally responsible for the death or serious injury of a child under section 22.04 of the Penal Code (injury to a child); and

- failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child.

*See* TEX. FAM. CODE § 161.001(b)(1)(D), (E), (L), and (O). The trial court also found that termination of T.H.'s parental rights was in the child's best interest. § 161.001(b)(2).

## APPLICABLE LAW

The Texas Family Code permits a court to terminate the relationship between a parent and a child if the Department establishes at least one of the predicate grounds under section 161.001(b)(1) of the Code and that termination is in the best interest of the

---

[4] T.H. testified the child was taken to the hospital with a high fever in 2021.

child.  *See* § 161.001(b)(1), (2).  *See also In re R.J.G.*, 681 S.W.3d 370, 377 (Tex. 2023); *In re Z.N.*, 602 S.W.3d 541, 545 (Tex. 2020); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976).  The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights.  *See In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).  *See also* § 161.206(a).  "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  § 101.007.

Only one statutory ground is needed to support termination though the trial court must also find that termination is in a child's best interest.  *In re K.C.B.*, 280 S.W.3d 888, 894–95 (Tex. App.—Amarillo 2009, pet. denied).  In reviewing a termination proceeding, the standard for sufficiency of the evidence is that discussed in *In re K.M.L.*, 443 S.W.3d 101, 112–13 (Tex. 2014).

**ISSUE ONE—SUFFICIENCY OF THE EVIDENCE TO SUPPORT BEST-INTEREST FINDING**

T.H. contends the evidence is insufficient to support the trial court's best-interest finding.  She asserts the Department did not present additional information to support the finding other than the caseworker's belief termination was in the child's best interest.[5]  We disagree.

---

[5] We review the best-interest finding under the factors set forth in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

4

T.H. offered many excuses for her conduct. She testified she bit her child's abdomen to subdue a tantrum and did not seek wellness visits with a pediatrician due to lack of transportation, lack of doctors when she lived in Vernon, and issues with Medicaid. She also admitted throwing a water bottle at her child to calm her down. Her conduct and omissions resulted in injuries which required the child to be hospitalized and treated for bruises, scratches, sunburn, blistered feet, bloody mouth, and a handprint on her cheek. She pled guilty to injury to a child. She subsequently gave birth to a son who was also removed from her care following his birth.[6]

T.H. completed most of her services but admitted she dropped out of the Texas Panhandle Center's treatment plan and sought counseling on her own, which she had not yet completed. Although she had a year to complete her services, she delayed commencement of some of those services until a few months before the final hearing.

T.H. was employed, had transportation, and her drug screens throughout the case were negative. She testified she gained knowledge from parenting classes but only gave examples of water safety, dry drowning, and placing hazardous materials out of reach of children. According to her, she had stable housing. The Department, however, was concerned about her living arrangements. She lived with a boyfriend she had dated for four months, and they had other roommates. They all had a history with CPS and criminal histories. The boyfriend and roommates expressed an unwillingness to cooperate with the Department and indicated they would not participate in drug screens.

---

[6] The record does not contain details on his birth or removal but does reflect another case is pending with the Department

5

The permanency specialist testified the child is doing "amazing" in foster care and her motor skills and speech are developing appropriately. She is very bonded with her foster family. The foster parents are licensed to adopt and have already adopted other autistic children who play well with T.H.'s child. The Department's goal is for the child to be adopted by the foster family if possible. The child is very young, barely verbal, and could not express her wishes. Her autism diagnosis explained her delayed speech but there was evidence she was improving and becoming verbal in foster care. The foster father sought evaluation for speech therapy and occupational therapy and was awaiting approval for services. T.H. admitted the child's delayed speech issues may have been identified sooner if she had taken her to regular medical appointments. We find the evidence is sufficient to support the trial court's best-interest finding.[7] Issue one is overruled.

**ISSUE TWO—SUFFICIENCY OF THE EVIDENCE TO SUPPORT PREDICATE GROUND (O)**

T.H. contends termination under section 161.001(b)(1)(O) requires reversal because she made a good faith effort to complete her court-ordered services. As previously mentioned, T.H. did not challenge or present an argument disputing the trial court's finding under subsection (L).[8] An unchallenged finding of a predicate ground is binding and will support affirming a termination order without addressing other predicate

---

[7] Subsection (D) and (E) were only mentioned in the Table of Contents. Neither (D) or (E) were raised anywhere in the briefing except for the Table of Contents. Because T.H. does not actually raise an issue under (D) or (E), nor are we affirming the trial court's order under (D) or (E), we will not do a separate analysis as required under *In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019).

[8] A challenge to subsection (L) would have been difficult because she admitted she pled guilty to injury to a child in exchange for deferred adjudication community supervision for four years.

6

grounds. *In re S.L.*, 421 S.W.3d 34, 37 (Tex. App.—Waco 2013, no pet.). Thus, we need not address her challenge to termination under subsection (O). Issue two is overruled.

## CONCLUSION

The trial court's termination order is affirmed.

Alex Yarbrough
Justice